IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

EMERICO AND GLORIA GARCIA,   §
      Plaintiffs,   §
v.   §
  §    C.A. NO. C-07-359
A. CONTRERAS, ET AL.   §
      Defendants.   §

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DISMISSING PLAINTIFFS' CLAIMS WITH PREJUDICE**

Pending is defendants' motion for summary judgment (D.E. 33), to deny plaintiffs' constitutional claims alleging excessive force and illegal search and seizure, as well as state law tort claims, and to dismiss those claims with prejudice. Plaintiffs have failed to file a response in opposition. For the reasons stated herein, defendants' summary judgment motion is GRANTED, and plaintiffs' claims are dismissed with prejudice.

**I.     Jurisdiction.**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

**II.    Procedural Background.**

Husband-wife plaintiffs, Emerico and Gloria Garcia, filed this civil action on August 26, 2007, alleging § 1983 civil rights violations and other, state law claims against Kleberg County, the City of Kingsville, and individual peace officers employed by the two municipalities. (D.E. 1). In particular, plaintiffs complain that on August 26, 2005, defendants conducted a warrantless search of their home and used excessive force against them, in violation of their Fourth, Eighth, and Fourteenth Amendment rights, as well as the Texas Tort Claim Act and other laws.

By Order of Dismissal entered February 28, 2008, plaintiffs' claims against Kleberg County

and individual Kleberg County peace officers were dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).  (See D.E. 20).  The dismissal was with prejudice because limitations had run on plaintiffs' claims with no service effected.  Id.  The Court denied plaintiffs' motion for reconsideration.  (D.E. 21, 23).

On September 11, 2008, the remaining defendants, the City of Kingsville, Officer Antonio Contreras, Officer Juan Garcia, Officer Augustine Ruiz, Officer Graciela "Grace" Garcia, Officer Richard Kirkpatrick, Officer Jason McGee, and Officer Humberto Gonzalez, filed the instant motion for summary judgment.[1]  (D.E. 33).   Plaintiffs have not filed a response in opposition.[2]

## III.   Summary Judgment Evidence.

The following facts are supported by the summary judgment evidence.[3]

On August 26, 2005, Detective Mendoza, an officer with the Kleberg County Sheriff's Department ("KCSD"), telephoned plaintiffs' residence and requested that plaintiffs' then seventeen year-old grandson, Emerico Garcia II, report to the sheriff's office for questioning.  (DSJ, Ex. A, Emerico Garcia Depo. at 20-22.).  Plaintiffs' grandson was living with plaintiffs' at the time.  Id. at 20.  The KCSD was investigating theft of property from the City of Kingsville (the "City").  Id. at 22.  Plaintiffs' grandson had worked for the City during the summer.  Id.

Plaintiff's grandson went to the Sheriff's department by himself.  Id. at 23.  There, KCSD officers Detective Mendoza and Deputy Longoria questioned him about the theft of property, including Freon.  Id. at 24.  Plaintiffs' grandson related that his grandfather kept Freon at the house for fixing

---

[1] The individual defendants are collectively referred to as "Defendant Officers."

[2] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

[3] Reference is to defendants' summary judgment motion ("DSJ") filed at D.E. 33, followed by an exhibit letter, and page number,  if appropriate.

cars, and he agreed to take the officers to plaintiff's residence to show them.  Id.

At plaintiffs' residence, the officers entered the house following plaintiffs' grandson.  (DSJ, Ex. B, Gloria Garcia Depo., at 8-9).  At the time, plaintiffs were at home and in their t.v. room, along with their granddaughter, Selina Hernandez.  (DSJ, Ex. A, Emerico Garcia Depo. at 24).  As the officers entered the t.v. room, Mr. Garcia asked them, "What do you want? Who are you?", but the officers did not identify themselves.  Id. at 24-25.  Plaintiffs' grandson then retrieved a box containing cans of Freon from the washroom and placed it on the kitchen table.  Id. at 25.  The officers then told plaintiffs that they were there to recover stolen property.  Id.  Mr. Garcia responded that the Freon was not stolen, that it was his, and that they could not take it.  Id.  He demanded to see the officers' search warrant or other authority for being in his home.  Id.  The officers related they did not have a warrant because plaintiffs' grandson had consented to the search.  Id.  Plaintiffs' grandson denied this, stating that he had planned to bring the Freon outside for the officers to inspect.  Id.  Detective Mendoza then picked up the box of Freon as if to take it with him.  Id. at 28.  Mr. Garcia grabbed Detective Mendoza by his shirt and held his arm back.  Id. at 31.  Deputy Longoria then grabbed Mr. Garcia's arms and wrestled them behind his back.  Id.

Mrs. Garcia, along with her granddaughter, Selina Hernandez, yelled at Deputy Longoria to leave Mr. Garcia alone because he had open heart surgery and he was old.  (DSJ Ex. B, Gloria Garcia Depo. at 12).  Deputy Longoria released Mr. Garcia.  Id.  Both officers began calling for backup on their radios.  Id. at 26-27.

Many officers arrived at plaintiffs' residence in response to the call for assistance, including officers from the City of Kingsville police, Task Force, Highway Patrol, Constable's office, and Border Patrol. (DSJ Ex. A, Emerico Garcia Depo. at 32).  Mr. Garcia identified City of Kingsville Officer A. Contreras, and Kleberg County Sheriff Deputies Cisneros, and Cantu, as coming into the

house.  Id. at 34-37.

Mr. Garcia then noticed that the officers' guns were drawn and that red lights were flashing everywhere.  (Emerico Garcia Depo. at 34).  Mr. Garcia was not sure if the guns were real guns or Tasers.  Id.  at 35.

The red lights were shining primarily on Mr. Garcia's chest.  (DSJ Ex. A, Emerico Garcia Depo. at 37).  Mr. Garcia also observed the lights on his wife and granddaughter, and about 10 to 12 lights shining on him.  Id. at 38-39.  Officer Longoria advised the officers not to shoot plaintiff because he had a heart problem.  Id. at 39.  The officers continued to point their guns and yell at plaintiff.  Id. at 40.  Plaintiffs' adult daughters, who had arrived at their home by that time, were yelling back at the officers, telling them to leave plaintiffs' home.  Id. at 40-41, 47.

Mrs. Garcia picked up a box of Freon and stated: "If you want that – that's what you want, just take it." and she threw it.  Id. at 49.  As she threw the box of Freon down, Mrs. Garcia was tased, and fell to the floor.  Id.  at 49, 62. Plaintiff's grandson told Mr. Garcia that he saw Officer Cisneros tase Mrs. Garcia.  Id. at 51-52.  Mr. Garcia was standing next to his wife when she was tased, but he could not tell who tased her because there were lots of people and he did not see anything come out of the guns.  Id. at 53.

Mr. Garcia was also tased at approximately the same time Mrs. Garcia was tased.  Id. at 61.  Mr. Garcia felt electricity go through his body as he administered nitro to his wife.  Id. at 55, 60.  After Mrs. Garcia fell to the ground, Mr. Garcia did not see any wire or metal probes attached to her skin.  Id. at 55-56, 64.  After administering nitro to Mrs. Garcia, she was slightly revived.  Id. at 58-59.  Shortly thereafter, an ambulance arrived and EMS personnel began administering first aid to Mrs. Garcia and checking Mr. Garcia's vital signs.  Id. at 59.  Plaintiffs were then transported to the hospital.  Id. at 59.

Kingsville police officer Antonio Contreras was on duty the afternoon of August 25, 2006, and he responded to Detective Mendoza's call for assistance. (DSJ Ex. M, Antonio A. Contreras Depo, at 1-2).[4]   In his offense report, Officer Contreras noted that he and Officer Gonzalez entered plaintiff's Kingsville residence.  Id. at 2. Officer Contreras observed Mr. Garcia became hostile toward Deputy Longoria. (See DSJ Ex. E-17, police offense report dated August 26, 2005).  In addition, he observed three females, later identified as Mrs. Garcia and plaintiffs' two grown daughters who arrived at the home, as screaming at the officers, and he characterized the situation  as "out of control."  Id. at 2.

Officer Contreras heard a noise like someone falling to the ground. Id. at 3.  He turned around and looked through the doorway that leads from the t.v. room to the kitchen, and observed Mrs. Garcia on the ground shaking.  Id.  He also saw that Officer Gonzalez had his Taser X26 device from its holster, but had not fired it.[5]  Id.  Officer Contreras heard Deputy Longoria advise Mr. Garcia that he was under arrest. Id.

## IV.   Summary Judgment Standard.

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). In the face of a properly supported motion for summary judgment, a plaintiff "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is

---

[4] Officer Contreras documented his participation in the incident in his offense report of that same date, a copy of which is attached to defendants' summary judgment motion as Ex. C-17.

[5] Officer Contreras testified that he knew Officer Gonzalez' had not fired his taser because: (1) he did not hear the distinctive "pop" sound that it would have made if fired; and (2) the cartridge was still affixed to the tasar and intact, and, had it been shot, the metal wires and probes from the cartridge would be deployed.  (DSJ Ex. M, Antonio A. Contreras Depo. at 3).

a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also

Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994).  The non-movant's burden

is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as

to the material facts.  Willis v. Roche Biomedical Lab., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see

also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and

unsupported speculation are not sufficient to [avoid] summary judgment").

      When the parties have submitted evidence of conflicting facts, however, "the evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61

F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most

favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g.,

Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000) (citing Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "That the movant appears more likely to prevail

at trial is no reason to grant summary judgment; it is not the province of the court on a motion for

summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd

v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. School Bd. of Lafayette, 92 F.3d

316, 318 (5th Cir. 1996).

## V.    Discussion.

      Defendants move for summary judgment on the grounds that: (1) plaintiffs failed to respond

timely to propounded requests for admissions, and the admissions were deemed admitted by Order

dated July 30, 2008, such that there are no issues of material fact, and defendants officers are entitled

to judgment in their favor as a matter of law; (2) there is no personal involvement by certain defendant

officers such that they are entitled to summary judgment in their favor on all of plaintiffs claims; (3)

there is no evidence that the defendant officers who did enter plaintiffs' residence ever fired their

tasers such that there is no credible evidence to support plaintiffs' claims of excessive force; (4) defendant officers are entitled to qualified immunity on plaintiffs' constitutional claims; (5) plaintiffs fail to establish that the City of Kingsville has a custom or policy approving excessive force or illegal search and seizure by its officers; (6) plaintiffs fail to establish a violation of the Texas Tort claims Act; and (7) plaintiffs fail to establish negligence.

### A.     Plaintiffs' status.

At the time of the events that form the basis of plaintiffs' claims, plaintiffs were private, free citizens residing in Kingsville, Texas.  As private citizens, they have a constitutional right under the Fourth Amendment to be free from unreasonable search and seizures, as well as excessive force.  See Graham v. Connor, 490 U.S. 386, 394 (1989) ("all claims that law enforcement officials have used excessive force– deadly or not– in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and 'reasonableness' standard rather than a 'substantive due process' approach.").  Accordingly, to the extent plaintiffs have attempted to raise their clams under the Eighth and Fourteenth Amendments, those claims are denied for failure to state a claim.

### B.     Personal involvement.

To state a cause of action under § 1983, plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.  Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995).  Personal involvement is an essential element of a civil rights case.  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  Plaintiff must prove that defendant either actively participated in the acts complained of, or implemented unconstitutional policies that resulted in injury.  Mouille v. City of Live Oak, Texas,

– 7 –

977 F.2d 924, 929 (5th Cir. 1992).

**1.     Officer Juan Garcia.**

Officer Juan Garcia is a former City of Kingsville police officer who is now working as a federal Border Patrol Agent in New Mexico.  (DSJ Ex. H, Affidavit of Juan Garcia at ¶ 2).  He states under oath that he cannot be liable for the deprivation of plaintiffs' constitutional rights on August 26, 2005, because he was not working as a police officer that day.  (DSJ Ex. H at ¶ 5).  In particular, he testifies:

> I did not work on August 26, 26, 2005, as it was my day off. I was not involved in any manner in the August 26, 2005 incident complained of by Emerico and Gloria Garcia in the above-referenced lawsuit.   I was not present on August 26, 2005 at the Garcia's residence located at 1238 E. Avenue B, Kingsville, Texas.

> Although I received training in the use of the Taser X26 device while  I was employed by the City Kingsville, I was never issued a Taser X26 device.  As such. I never used a Taser X26 device on any subject while I was employed by the City of Kingsville.

(DSJ Ex. H at ¶ 6).

 Plaintiffs named Officer Garcia in their complaint, but did not identify this defendant in their deposition as participating in the denial of any constitutional right.  (See DSJ Ex. A and Ex. B). Further, plaintiffs admit that Officer Garcia did not enter their home on August 26, 2005 or violate their rights under the Eighth Amendment as they failed to admit or deny defendants' propounded requests for admissions, and they were deemed admitted by order entered July 30, 2008. (See D.E.31, Ex. 1, 2, and D.E. 30).  Moreover, in failing to file a response to the summary judgment motion, plaintiffs effectively concede this point.  Thus, there is no factual dispute that Officer Juan Garcia was not personally involved in the August 26, 2005 incident that forms the basis of plaintiffs' complaints herein.  Accordingly, he is entitled to summary judgment in his favor as to all of plaintiffs' claims as

he was not present at plaintiffs' resident on August 26, 2005, and therefore, as a matter of fact, could not have been personally involved in the incident that forms the basis of plaintiffs' claims and thus, as a matter of law, can not be liable to plaintiffs for violating their rights.  Officer Garia is entitled to judgment in his favor.

        **2.**      **Officer Grace Garcia.**

Similarly, there is no evidence to support plaintiffs' claims  against defendant Officer Grace Garcia because plaintiffs fail to offer any evidence to suggest that this defendant was personally involved in the alleged violation of their constitutional rights on August 26, 2005.  The uncontested facts establish that Officer Grace Garcia was not present at the Garcia's residence on August 26, 2005.  (See DSJ Ex. I. Graciela M. Garcia Affidavit at ¶ 5).   In her affidavit, she states that she was not present at the Garcias' residence on August 26, 2005.  Id.  In addition, Officer Grace Garcia relates that she has not been trained to use a Taser X26 device, nor has she ever been issued a Taser X26 device.  Id. at ¶ 6.  As such, she could not be responsible for the alleged excessive force complained of by plaintiffs.  Further, plaintiffs admitted that Officer Grace Garcia did not violate their constitutional rights. (D.E. 30, 31).  Moreover, plaintiffs failed to file a response in opposition to the summary judgment motion, thus they failed to place in issue any fact for trial.  See Anderson, 477 U.S. at 248-49 (the nonmoving party cannot rest on the mere allegations of the pleadings). The uncontested facts establish that Officer Grace Garcia was not personally involved in the alleged constitutional violations, and she is entitled to summary judgment in her favor.

        **3.**      **Officer Richard Kirkpatrick**.

Plaintiffs named Officer Kirkpatrick in their original and amended complaints; however, in their deposition testimonies, neither defendant identified Officer Kirkpatrick by name or testified that

he violated their constitutional rights. (<u>See</u> DSJ Ex. A and B).  Indeed, according to the uncontested affidavit of Officer Kirkpatrick, although he responded to the dispatched call and reported to plaintiffs' home on August 26, 2005, he:

> ... remained outside the residence in order to maintain the peace. I, along with other officers, secured the outside perimeter of the residence by ensuring that only law enforcement officers were permitted to enter the residence.  I did not at any time on August 26, 2005, have any contact, verbal or physical, with Emerico or Gloria Garcia.  I did not seize any property from the Garcias on August 25, 2005.

DSJ Ex. J, Affidavit of Richard C. Kirkpatrick at ¶6.

Plaintiffs offer no evidence or testimony to dispute Officer Kirkpatrick's testimony. Moreover, Officer Kirkpatrick testified that, although he has been issued a TaserX26, he neither displayed or used it on August 26, 2005. <u>Id.</u> at ¶ 7.  In fact, Officer Kirkpatrick has **never** deployed his Taser on any subject.  <u>Id.</u>  Defendant Officer Kirkpatrick is entitled to summary judgment in his favor.

### 4.    Officer Jason McGee.

Plaintiffs identified Officer Jason McGee as an individual who violated their constitutional rights.  Officer McGee moves for summary judgment on the grounds of no personal involvement. Like Officer Kirkpatrick, Officer McGee responded to the dispatched call requesting backup at the plaintiffs' residence on August 26, 2005.  (DSJ Ex. K, Affidavit of Jason D. McGee at ¶ 6).  Along with other officers, Officer McGee helped to secure the **_perimeter_** of the residence.  <u>Id.</u>  However, Officer McGee **_did not enter_** the residence.  <u>Id.</u>  Indeed, Officer McGee had no personal contact with either plaintiff.  <u>Id.</u>  Nor did he remove any property from their home.  <u>Id.</u>   As such, Officer McGee had no personal contact with either plaintiff, and as such, he could not have violated their

constitutional rights.   He is entitled to summary judgment in his favor.

### 5.   Officer Augustine Ruiz.

Plaintiffs named Augustine Ruiz as a defendant in their original and amended complaints. Officer Ruiz moves for summary judgment arguing that he had no personal involvement in the alleged violation of plaintiffs' constitutional rights.

In his affidavit, Officer Ruiz states that, on August 26, 2005, he responded to the dispatched call and reported to plaintiffs' residence; however, he did not enter plaintiffs' home, but remained outside, securing the perimeter with other officers.  (DSJ Ex. L, Affidavit of Augustine Ruiz, Jr. at ¶ 6).   He did not take any property from plaintiffs' residence.  Id.  Moreover, although he had been issued a Taser X26 device, he neither used nor displayed it on that date.  Id.  Like officers Juan Garcia, Grace Garcia, Richard Kirkpatrick, and Jason McGee, Officer McGee had no personal involvement with plaintiffs such that he is not liable to plaintiffs for any alleged constitutional violation.  Officer Ruiz is entitled to summary judgment in his favor.

### C.   Fourth Amendment Claims.

Of the seven City of Kingsville officers that were sued by plaintiffs, only two officers actually entered plaintiffs' residence and had personal contact with them: Officer Contreras and Officer Gonzalez.  Plaintiffs claim that these two officers used excessive force against them and conducted a warrantless search in violation of their constitutional rights.

The Fourth Amendment requires officers entering a person's home to conduct a search to have a warrant based on probable cause.  See United States v. Blount, 123 F.3d 831, 837(5th Cir 1997).  Warrantless searches inside a home are *per se* unreasonable and, therefore, unconstitutional, unless they fall into one of the few specifically established exceptions to the general rule.  Schneckloth v.

Bustamonte, 412 U.S. 218, 242-49 (1973).  Consent and exigent circumstances are two well-settled

exceptions to the Fourth Amendment's warrant requirement.  Id.; Payton v. New York, 445 U.S. 573

(1980).

In this case, Officer Contreras and Officer Gonzalez entered plaintiffs' residence in response

to the Kingsville Police Department dispatcher's radio call requesting assistance from Detective

David Mendoza of the Kleberg County Sheriff's Department who was at plaintiffs' residence.  (See

DSJ, Ex. M, Affidavit of Antonio A. Contreras at ¶ 5; Ex. N, Affidavit of Humberto G. Gonzalez at

¶ 5).  Such an entry is justified under the exigent circumstances exception.  See Tamez v. City of San

Marcos, Texas, 118 F.3d 1085, 1093 (1997) (officer's call for back-up may qualify as exigent

circumstance justifying entry into home).[6]  The Court finds that Officer Contreras and Officer Gonzalez

had just cause to enter plaintiffs' residence pursuant to the dispatched call for backup assistance from

the Kleberg County Sheriff's Department.

Once inside, Officer Contreras stood approximately three feet behind Officer Gonzalez.  (DSJ

Ex. M, Affidavit of Antonio A. Contreras at ¶ 7).  Officer Contreras observed Officer Gonzalez

speaking to Mrs. Garcia, attempting to verbally calm her down.  Id.  He relates further that:

> ... I then heard a noise which sounded to me as though a person had
> fallen down to the floor.  I turned around and, through the open
> doorway which leads from the t.v. room to the kitchen, I observed
> Gloria Garcia on the ground in the kitchen.  I saw her shaking.  I also
> observed that Officer Gonzalez had removed his Taser X26 device
> ("Taser") from his holster but had not fired it.  I confirmed that he had
> not fired his Taser when I observed that the cartridge was still affixed
> to the Taser and was in tact.  Had Officer Gonzalez fired his Taser, the
> Taser's cartridge containing the metal wires and probes would have
> been deployed from the Taser.  Also, I did not hear the Taser fired.
> Had Officer Gonzalez fired the Taser, I would have heard the very

---

[6] The Court makes no ruling on the validity of Detective Mendoza's and Officer Longoria's  initial
entry into plaintiffs' home ostensibly based on their grandson's invitation.

distinctive, "pop" sound which is made by the Taser X26 device when fired.

Id.

Regarding Mr. Garcia, Officer Contreras states that he observed Officer Gonzalez pointing his Taser at Mr. Garcia; however, Deputy Longoria shook his head, put his hand in front of Officer Gonzalez' Taser indicating not to fire, and stating that Mr. Garcia had a heart condition. Id. at ¶ 9. Thus, according to Officer Contreras, Officer Gonzalez did not shoot either Mrs. Garcia or Mr. Garcia with the Taser.

Officer Contreras states that he, also, did not shoot either plaintiff with a Taser on August 26, 2005. Id. at ¶ 10. Officer Contreras testifies that, although he was trained on how to shoot a Taser, he was not issued a Taser until March 27, 2007, approximately 22-months after the incident. Id. He did not have a Taser on his person the day he went to the Garcias' residence. Id. Thus, Officer Contreras could not have been responsible for the excessive force allegedly caused by a Tazer against Mr. Garcia and Mrs. Garcia.

The uncontested testimony of Officer Gonzalez is in agreement with the testimony of Officer Contreras. Officer Gonzalez states that, as he approached the residence, he heard several individuals screaming inside. (DSJ Ex. N, Affidavit of Humberto G. Gonzalez, at ¶ 6). Officer Contreras was already inside the residence, and he advised Officer Gonzalez by radio to come inside to assist him and the other officers. Id. Once inside the kitchen, Officer Gonzalez observed Mrs. Garcia pushing a Kleberg County officer, Sergent O. Rosales. Id. at ¶ 7. Officer Gonzalez placed himself between Mrs. Garcia and Sgt. Rosales, and tried to calm down Mrs. Garcia. Id. Thereafter, plaintiffs' grandson entered the room, and Officer Gonzales "felt threatened" because he had still not determined why the Kleberg County Sheriff oficers were at the residence, and individuals were visibly upset and

yelling.  Id.  Officer Gonzalez then pulled out his Taser X26 device and pointed it at Mrs. Garcia, but without the laser activated.  Id.  He then saw Mrs. Garcia notice the Taser,

> and, while screaming, throw herself to the kitchen floor.  While on the floor, Mrs. Garcia continued to scream and began to shake.  I then heard Sgt. Rosales request an ambulance for Mrs. Garcia.

Id.

Thereafter, Officer Gonzalez pointed his Taser with the laser activated at Mr. Garcia.  Id. ¶ 8.  However, Officer Longoria placed his hand in front of the Taser and advised him that Mr. Garcia had a heart  problem to prevent him from using it.  Id.  Officer Gonzalez then re-holstered his Taser. Id.

In support of their motion for summary judgment, defendants offer the affidavit of Ricardo A. Salinas, a City of Kingsville police officer who serves as the Taser Control Manager.  (See DSJ Ex. G, Affidavit of Ricardo A. Salinas).  Officer Salinas testifies that he maintains the records regarding training and issuance of all Tasers, as well as the discharge records.  Id. at ¶ 6.  Officer Salinas confirms  that on August 26, 2005, Officer Contreras did not have a Taser.  Id. at ¶ 26.  Officer Gonzalez' Taser was not fired at any time during the afternoon, the time during which the incident with the Garcias occurred.[7]

There is no evidence to support plaintiffs' claims of excessive force.  They have no witness statements, no medical evidence, and no sworn statement to create a fact issue to rebut defendants' sworn statements refuting that any force occurred, let alone excessive.  Defendants have presented uncontroverted evidence that their entry onto plaintiffs' property was reasonable, and that no excessive force was used against the plaintiffs.  Only Officer Contreras and Officer Gonzalez had

---

[7] Records indicate that Gonzalez' Tazer was fired early that morning three times, for a duration of 1 second each time, at 8:40:47, 8:58:36, and 8:58:38.  (DSJ Ex. G at ¶ 26).

actual personal involvement, and of these two defendants, only Officer Gonzalez possessed a Taser on August 26, 2005. However, the dataport download reveals that Officer Gonzalez' Taser was not fired during the time he was at the Garcias' residence. Moreover, Officer Gonzalez testified under oath that he did not fire his Tazer; Officer Contreras did not hear the distinctive "pop" sound; and there were no wires with metal probes attached to Mrs. Garcia, which would be present had the Taser been fired at a range of 3 to 4 feet. (See Torres Aff't, DSJ Ex. G at ¶ 12). The undisputed factual evidence shows that no Taser was fired by either of the two City of Kingsville defendants that went into plaintiffs' residence. The defendant officers are entitled to summary judgment on plaintiffs' constitutional claims against them.

### D. Claims against the City of Kingsville.

Plaintiffs have sued the City of Kingsville arguing that it has a custom or policy of allowing its officers to use excessive force, or failing to supervise its officers regarding excessive force.

To prevail on its § 1983 claim against the City, plaintiffs must prove three elements: (1) the existence of an official policy (or custom); of which (2) a policymaker had actual or constructive knowledge; and (3) that the policy (or custom) was the "moving force" behind the constitutional violation. Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); see also Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-33 (5th Cir. 1996). A plaintiff can satisfy the requirement of an "official policy or custom" by proving:

> [a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Id. (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). Thus, "the

unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citing Bennett v. City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir. 1984)).  Rather, a plaintiff must show "persistent, often repeated constitutional violations" in order to hold a municipality liable under § 1983. Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir. 1995); see also Pineda, 291 F.3d at 329 (stating that the constitutional violations must be "persistent and widespread").

Even if a custom is shown, a plaintiff must also demonstrate "[a]ctual or constructive knowledge of such custom . . . attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."[8]  Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003)(citing Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984)).  With respect to element of knowledge, the Fifth Circuit has held that:

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information.  Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

Id. at 330.  Thus, if a plaintiff relies on the actions of city police officers to prove knowledge, "those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." Webster, 735 F.2d at 842.

---

[8] In Pineda, the Fifth Circuit made clear that a custom and knowledge of that custom are separate elements.  Proof of a custom does not automatically establish that the municipality had constructive knowledge of the custom.  Pineda, 291 F.3d at 330 n. 13.  For example, "[a] pattern may exist without actual or constructive knowledge because the facts of the events are concealed from policymakers."  Id.

In this case, plaintiffs are unable to establish that excessive force occurred in this instance, let alone that City policymakers had actual or constructive knowledge of a widespread practice of officers using excessive force.  Moreover, plaintiffs have not come forward with evidence of episodes of excessive force or similar complaints to support their claims.  In not filing a summary judgment response, plaintiffs have not offered any evidence to suggest that the the City of Kingsville police have a custom or policy of using excessive force.

Finally, even if plaintiffs could establish the existence of a custom among Kingsville police officers, their claim against the City must fail because they have failed to offer any evidence that the City had actual or constructive knowledge of that custom.  See Webster, 735 F.2d at 842.  Plaintiffs' municipal custom claim against the City must fail.

Plaintiffs' also claim that the City failed to train properly its officers.

It is well-settled that a city's policy of failing to train its police officers can give rise to § 1983 liability.  Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000).  In order to prove a claim based on failure to train, a plaintiff must show "(1) inadequate training procedures; (2) that inadequate training caused the [constitutional violation]; and (3) the deliberate indifference of municipal policymakers." Pineda, 291 F.3d at 332 (citing Conner v. Travis County, 209 F.3d 794, 796 (5th Cir. 2000)).  The focus of the court's inquiry "must be on adequacy of the training program in relation to the tasks the particular officers must perform." City of Canton v. Harris, 489 U.S. 378, 390 (1989).  As the Supreme Court explained:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  It may be, for example, that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not

> condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

Id. at 390-91.

Again, plaintiffs have provided no evidence of inadequate training in response to defendants' motion for summary judgment. Moreover, the undisputed evidence in the case shows that the City operates a training program certified by the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE"). (See DSJ EX. E, Affidavit of Ricarrdo Torres, at ¶ 4.) Indeed, Chief Torres, Chief of Police for the City of Kingsville, testified that all city officers and task force specialist are required to hold peace officer licenses issued by TCLEOSE. Id. As part of their law enforcement training and continuing education training mandated by TCLEOSE, the City's police officers receive training in legal limits on the use of force, specific instruction on techniques for making arrests and bringing arrestees into compliance with a minimal amount of force, and the constitutional requirements related to use of force, searches and searches. Id. In addition, the City's police receive training that is not required by TCLEOSE, including field training where new officers ride with experienced officers for eighteen weeks and are evaluated. Id. at ¶ 5.

Plaintiffs have failed to present any evidence to suggest that the City's existing policies are "obviously inadequate" such that the likely consequences of not adopting further policies will be a deprivation of constitutional rights. Rhyne v. Henderson County, 973 F.2d 386, 392 (5th Cir. 1992); see also Jacobs v. West Feliciana Sheriff's Dept., 228 F.3d 388, 396 (5th Cir. 2000) (noting that "the county policies did not exhibit deliberate indifference because there was no evidence that those policies were 'obviously inadequate'"). To the contrary, the City has policies in place to ensure the proper training of peace officers to protect the constitutional rights of its citizens. Plaintiffs claims

against the City of Kingsville are without merit, and the City is entitlee to judgment in its favor.

### E.   Retaliation.

Plaintiffs claim that the August 26, 2005 incident occurred, in part, in retaliation for their grandson allegedly being involved with stolen property from the City of Kingsville.

To state a valid § 1983 claim for retaliation, plaintiffs must allege (1) a specific constitutional right, (2) defendants' intent to retaliate against plaintiffs for their exercise of that right, (3) a retaliatory act, and (4) causation.   Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).   The plaintiffs "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"   Woods, 60 F.3d at 1166 (citations omitted).

In this case, plaintiffs argue that defendants were motivated to retaliate against them because their grandson had been questioned about stolen City property.   However, the uncontested facts establish that plaintiffs' grandson had worked for the City over the summer, and an eyewitness had seen him locking a shed, such that they had good cause to call him in for questioning.   Plaintiffs fail to establish a chronology of events from which retaliation can be inferred.   Indeed, this appears to be an episodic act in which events spiraled out of control, mostly in part due to the hysterics of plaintiffs. Plaintiffs' claim of retaliation is without merit, and is denied.

### F.   State law claims.

Plaintiffs have also sued the City on the grounds that its officers were negligent and reckless regarding their duties.

#### 1.   Intentional torts barred by sovereign immunity.

Under the common law doctrine of sovereign immunity, a governmental entity such as the City of Kingsville is immune from tort liability for its own acts or the acts of its employees unless the

Legislature has waived immunity. <u>Dallas County Mental Health & Mental Retardation v. Bossley</u>, 968 S.W.2d 339, 341 (Tex.), <u>cert. denied,</u> (1998). Absent a waiver, a municipality is not liable for acts within its governmental function. A governmental function is one which is public in nature and performed by the municipality "as the agent of the State in furtherance of general law for the interest of the public at large." <u>Gates v. City of Dallas</u>, 704 S.W.2d 737, 739 (Tex. 1986). Police matters, including police protecxtions and control, fall within a municipality's governmental function. <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(1). Within its governmental functions, a municipality is only liable for those actions clearly stated within the waivers set forth in § 101.021 of the Texas Tort Claims Act (the "Act"). The Texas Legislature has recognized in the Act that immunity is waived for:

    (1)    property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope <u>if</u>:

        (A)    the property damage, personal injury or death arises from the operation or use of a motor driven vehicle or motor-driven equipment; and

        (B)    the employee would be personally liable to the claimant according to Texas Law; and

    (2)    personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas Law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon Supp. 2007).

The Act, however, specifically excludes and excepts from its waiver of immunity claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101. 057; <u>see</u> <u>Delaney v. City of Houston</u>, 835 S.W.2d 56 (Tex. 1990) (as a matter of law, a municipality is not liable for the intentional torts of its employees). The Legislature has not created, statutorily or otherwise, any exception to the intention tort exclusion.

Thus, to the extent plaintiffs seek to hold the City of Kingsville liable for the intentional torts of its employees, those claims are barred by sovereign immunity.

### 2.    Negligence claims.

Plaintiffs claims that the City negligently entrusted incompetent officers with Tasers.

To state a claim for negligent entrustment, plaintiffs must demonstrate: (1) the City entrusted the Tasers to the officers; (2) the officers were not licensed, incompetent or reckless officers/users of the Tasers; (3) at the time of entrustment, the City knew or should have known that the officers were not licensed, incompetent, or reckless officers/users of Tasers; (4) the officers were negligent on the occasion in question; and (5) the officers' negligence proximately caused plaintiffs' injuries.  See Goodyear Tire & Rubber Co. V. Mayes, 236 S.W.3d 754, 758 (2007).

First, as discussed previously, the weight of the summary judgment evidence suggests that plaintiffs' were not tasered by either Officer Contreras or Officer Gonzalez.  Officer Contreras did not have a Taser that day.  Officer Gonzalez, the only defendant with a Taser, testified that he did not fire his Taser and the physical evidence holds that Officer Gonzalez' Taser was not fired during the incident.  Plaintiffs have failed to offer any evidence to prove that they were tasered, and it is only their unsupported testimony that they were tasered.

Second, plaintiffs offer no evidence of negligent entrustment.  Defendants have demonstrated that they are licensed in the use of Tasers, and licensed police officers.  See DSJ Ex. E, Torres Affidavit, and DSJ Ex. G, Salinas Affidavit.  Finally, even if plaintiffs could prove that they were tasered by these defendants, and that defendants officers were negligent in doing so, they offer no evidence to demonstrate that the City knew or should had have known that these officers would be negligent.  Plaintiffs fail to state a claim of negligence.

## IV.    CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment (D.E. 33) is GRANTED, and plaintiffs' claims against defendants are hereby dismissed with prejudice.

Signed this 20th day of October, 2008.

Janis Graham Jack
United States District Judge